UNITED STATES *v.* RITTER CARLTON CO. (No. 4411)[1]
RITTER CARLTON CO. *v.* UNITED STATES (No. 4412)

United States Court of Customs and Patent Appeals, March 1, 1943

*Paul P. Rao*, Assistant Attorney General (*Joseph F. Donohue* and *Richard E. FitzGibbon*, special attorneys, of counsel), for the United States.
*Puckhafer, Rode & Rode* (*Howard C. Carter* of counsel) for Ritter Carlton Co.

[Oral argument February 2, 1943, by Mr. Rao and Mr. Carter]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

Ritter Carlton Co., the importer, brought suit against the United States in the United States Customs Court to recover certain moneys

---

[1] C. A. D. 233.

alleged to have been improperly exacted as customs duties by the Collector of Customs of the port of New York on an importation of certain steel measuring instruments.

The imported merchandise was classified by the collector as "rules" and assessed with duty at the rate of 45 per centum ad valorem, under paragraph 396 of the Tariff Act of 1930. The paragraph reads as follows:

PAR. 396. Drills (including breast drills), bits, gimlets, gimlet-bits, countersinks, planes, chisels, gouges, and other cutting tools; pipe tools, wrenches, spanners, screw drivers, bit braces, vises, and hammers; calipers, rules, and micrometers; all the foregoing, if hand tools not provided for in paragraph 352, and parts thereof, wholly or in chief value of metal, not specially provided for, 45 per centum ad valorem.

The importer in his protest claimed that the imported articles were properly dutiable as household utensils at 40 per centum ad valorem under paragraph 339, and alternatively that they were properly dutiable as machines not specially provided for at 27½ per centum ad valorem under paragraph 372 of said act. The pertinent portions of said paragraphs read as follows:

PAR. 339. Table, household, kitchen, and hospital utensils, * * * not specially provided for: * * * composed wholly or in chief value of copper, brass, steel, or other base metal, not plated with platinum, gold, or silver, and not specially provided for, 40 per centum ad valorem; * * *.

PAR. 372. * * * all other machines, finished or unfinished, not specially provided for, 27½ per centum ad valorm: * * *.

The suit was tried in the city of New York before the Second Division of the said court.

It was stipulated between the parties that the involved merchandise was "composed wholly or in chief value of a base metal, which is neither aluminum, nor iron or steel enameled or glazed with vitreous glasses, and not plated with platinum, gold or silver, or colored with gold lacquer."

The imported goods consist of three different types. One type, represented by Exhibit 1, is a circular metal case in which there is coiled a convex metal strip ½ inch wide, 6 feet in length, calibrated in inches subdivided into sixteenths. In using the article for measuring, which is its only use, the metal strip is drawn through an aperture in the circumference of the casing to whatever length may be desirable. The strip has been called in the record "semi-flexible." We take this expression to indicate that when in use it is, with slight support, substantially rigid. After use the strip is returned to the case by pushing it back by hand through the slot in short thrusts.

The second type, represented by Exhibit 2, is similar in all respects to Exhibit 1 except that it is provided with a spring and ratchet on the center post or drum around which the strip is coiled. By means of

the spring the strip is recoiled after use. The ratchet acts to hold the strip in the position to which it has been extended.

The third type, represented by Exhibit 3, comprises an octagonal casing and a metal strip the concave side of which contains two scales, one for outside and one for inside measurements, and the convex side of which contains a single scale. In all other respects Exhibit 3 is similar to Exhibit 2.

The importer rested his case in chief upon the testimony of a single witness who stated he was a partner in Ritter Carlton Co. He testified that he had known merchandise like that of the exhibits since 1933; that he had used Exhibits 1 and 2 around the house to measure for curtains and to locate the proper place for hanging pictures; and that he had seen the article such as Exhibit 1 used by other people generally as he had used it. He further testified that he had never seen Exhibit 1 used anywhere except in the household; that he had seen salesmen carry merchandise similar to Exhibits 2 and 3 around in their pockets; and that he was familiar with the internal mechanism of Exhibits 2 and 3 for the reason that he had taken them apart. He testified that merchandise identical with Exhibit 1 was sold by him as "a syndicate store number—Woolworth's, Kress's, Kresge's, Murphy's; that kind of store," merchandise identical with Exhibit 2 was sold "to all the syndicates" and merchandise identical with Exhibit 3 "we sold almost entirely to Sears, Roebuck & Company; they were our best customers for that." According to the witness the involved merchandise was sold under several names: "Flex-Rigid Tapes," "Coilable Metal Rules" and "Flexible Steel Rules." In answer to a question by a member of the trial court the witness defined a rule as follows:

My definition of a rule is a straight-edge, similar to Illustrative Exhibit A, something you use to draw a straight line with, to rule a line.

Illustrative Exhibit A is a stiff metal 1-foot rule calibrated on one edge in millimeters and on the other in inches and subdivisions thereof.

Four witnesses appeared for the Government, whose testimony generally is that merchandise similar to Exhibits 1, 2, and 3 was chiefly used by mechanics and architects. In view of our conclusion, it is not necessary to discuss their testimony.

The importer in rebuttal called four witnesses, all of whom testified that they had used merchandise similar to Exhibits 1, 2, and 3 in their homes for ascertaining the dimensions of windows, floors, and the like.

Upon this record the trial court stated that while the imported merchandise are rules of a certain kind, citing *Smillie & Co.* v. *United States*, 11 Ct. Cust. Appls. 199, T. D. 38966, it held, considering the testimony of the witnesses, the type of stores selling the articles, and

the appearance of the exhibits, that the merchandise represented by Exhibits 1 and 2 is of the character chiefly used in the home rather than by mechanics and other workers. The court further stated as follows:

Inasmuch, therefore, as it is well established that a use provision takes precedence over one containing words of general description or even over an eo nomine designation, we hold as a matter of law that the steel rules, represented by items 1017 and 1033 on the invoices accompanying the entries covered by this suit, are properly dutiable at the rate of 40 per centum ad valorem under paragraph 339 of the Tariff Act of 1930 as household utensils of the kind therein made dutiable at that rate, as alleged by the plaintiff. That claim is therefore sustained.

With respect to the articles represented by Exhibit 3, the court held that they are not chiefly used in the home and are therefore more specifically provided for as "rules" under the *eo nomine* designation of paragraph 396 than as machines not specially provided for, as claimed by the plaintiff, although the court stated that those articles are such as would be included within the definition of a machine as defined in the case of *Simon, Buhler & Baumann (Inc.)* v. *United States*, 8 Ct. Cust. Appls. 273, T. D. 37537.

The court accordingly entered judgment sustaining the claim of the importer that the merchandise as represented by Exhibits 1 and 2 is properly dutiable as household utensils at the rate of 40 per centum ad valorem under paragraph 339 and overruled the protest with respect to the merchandise represented by Exhibit 3.

From that judgment both parties appealed here.

The questions presented for decision in the cross-appeals are whether the articles represented by Exhibits 1, 2, and 3 are properly dutiable as classified by the collector or dutiable as household utensils, and whether the merchandise represented by Exhibits 2 and 3 are properly dutiable as machines.

In this case, as in all classification cases, the importer has the burden of establishing not only that the classification of the collector is erroneous, but that the classification it claims to be proper is correct. In our opinion Ritter Carlton Co. has not sustained that burden.

It is clear that the imported merchandise is within the common meaning of the term "rules" as contained in paragraph 396. That term will be seen from an examination of the dictionary definitions to be of wide application. Used as a noun (and that is the sense in which it is used in the involved paragraph) it may be a rule of behavior, a rule of evidence, a judicial order, a straight-edge instrument used as a guide in drawing straight lines, an instrument used for measuring, and may be applied in other ways.

Ritter Carlton Co. contends that the involved articles are not "rules" for the reason principally that they are used only as measuring

instruments. It is obvious that no single article could meet all the various definitions of the term "rules" and that the definition "an instrument for use in measuring" is amply sufficient to describe the involved merchandise within the meaning of the statute. It will be noted that in paragraph 396 rules, calipers, and micrometers are set off from the rest of the paragraph by semicolons. This, we think, indicates that it was the intent of the Congress to provide for rules in that paragraph as measuring instruments, and we so hold.

There is no occasion for us to discuss the reasoning of the court in holding that articles such as Exhibits 1 and 2 are more specifically provided for as household utensils as claimed by the importer than as the articles were classified by the collector for the reason that there is nothing in the record which tends to prove that they are chiefly used as household utensils throughout the United States. We are not informed where the witnesses for Ritter Carlton Co. reside or the location of the homes or houses wherein they used or saw any of the involved merchandise being used. We certainly cannot take judicial notice that the syndicate stores mentioned in the record sell nothing but household utensils. Neither can we assume that articles such as the imported merchandise were distributed by the so-called syndicate stores throughout the United States.

For the reasons herein stated we hold that Ritter Carlton Co. has not sustained its burden of proof that the involved articles are household utensils. *Frank P. Dow Co., Inc.* v. *United States*, 21 C. C. P. A. (Customs) 282, T. D. 46816. See also *Pacific Guano & Fertilizer Co. et al.* v. United States, 15 Ct. Cust. Appls. 218, T. D. 42240.

We agree with that part of the decision of the trial court holding that the articles represented by Exhibit 3 are not machines. Ritter Carlton Co. in its appeal contends that the trial court erred in not holding the involved articles represented by Exhibits 2 and 3 to be properly dutiable as machines not specially provided for. Certainly being specifically provided for under paragraph 396 as rules, they cannot properly be held to be included in the catch-all provision of paragraph 372 for machines not specially provided for. However, we cannot agree that the articles at bar are machines. Ritter Carlton Co. relies upon the description given by the witness in its case in chief to sustain its contention that Exhibits 2 and 3 are machines. That description reads as follows:

A. This tape is composed of a binding post, around which is wound a winding spring, a piece of flat steel spring, and that, in turn, is attached to a little drum, which is attached to the tape. There is a ratchet attachment. You release the ratchet and, zip, back comes the tape (illustrating). You can hear the ratchet.

The mere fact that these exhibits contain a spring and a ratchet which hold the measuring means in position while in use, and cause it to

recoil when it is desired to return it to the case, in our opinion does not bring them within the definition announced by this court in the *Simon, Buhler & Baumann* case, *supra.* This court held in the case of *United States* v. *Wm. Goldenblum & Co.*, 18 C. C. P. A: (Customs) 367, T. D. 44616, that carpenters' braces, some of which were provided with a ratchet attachment and some not, were not machines in a tariff sense. In that case we stated:

We are of opinion that the involved articles do not utilize, apply, or modify energy or force, or transmit motion, within the meaning of the definition of machines announced by this court in the *Simon, Buhler & Baumann* case, *supra,* and we so hold.

While the articles involved in the *Goldenblum & Co.* case, *supra,* did not contain a spring attachment such as is in Exhibits 2 and 3, that difference is not sufficient to warrant us in holding that Exhibits 2 and 3 are machines. We are of opinion that the case of *United States* v. *Adler-Jones Co.*, 20 C. C. P. A. (Customs) 397, T. D. 46231, is applicable here. In that case the involved merchandise consisted of a manikin with the form and features of "Mr. Jiggs" as shown in the comic strips of the cartoonist McManus. The manikin was about 4 feet in height and was intended for use in display advertising. The importation was equipped with a concealed mechanism to be wound by a key and, by means of a spring and pendulum arrangement, the body and head of the manikin were caused to swing or rock back and forth. The apparatus was held not to be a machine under the definition given in the *Simon, Buhler & Baumann* case, *supra,* the court stating that that definition is quite broad, and—

must be applied under the limitations made necessary by the facts of any case in which its application is sought. Entirely applicable in that case because of the nature of the article at issue, for that very reason it is not applicable here.

The mechanical device which causes the swinging or rocking of the body and head is but a small part of the figure and affects only a portion thereof. The article, we think, must be considered as a whole, no language of the tariff act being found which suggests any other method of treatment.

So in the instant case the mechanical device which causes the measuring means to be stopped and recoiled is but a small part of the article and affects only a portion thereof. It has nothing to do with measuring, nor with the case enclosing the measuring means.

For the foregoing reasons the judgment of the United States Customs Court is *reversed* with respect to its holding as to Exhibits 1 and 2 and *affirmed* as to its holding with respect to Exhibit 3.