SMILLIE & CO. *v.* UNITED STATES (No. 2092).[1]

1. SCOPE OF EO NOMINE PROVISION.

Where a dutiable provision names an article without terms of limitation all forms of the article are thereby included unless a contrary legislative intent otherwise appears.

2. CLEANING NOT MANUFACTURING PROCESS.

As a general rule, the mere cleansing of an article is not regarded as a partial manufacture of it into a new or different article.

3. SILK PARTIALLY MANUFACTURED.

The provision of paragraph 311, tariff act of 1913, for silk partially manufactured from waste silk contemplates a substantial change in the condition of the waste silk.

4. WASTE SILK, BOILED.

Broken pieces of silk filaments and cocoons, resulting as a waste or by-product of the reeling of the silk from the cocoons, are not to be regarded as silk partially manufactured from waste silk (par. 311, tariff act of 1913) by reason of the fact that they have been cleaned of gum and other impurities by boiling. Such merchandise remains silk waste under free-list paragraph 599.

---

[1] T. D. 38966.

## United States Court of Customs Appeals, December 14, 1921.

APPEAL from Board of United States General Appraisers, G. A. 8406 (T. D. 38607).

[Reversed.]

*B. A. Levett* for appellants.

*Wm. W. Hoppin,* Assistant Attorney General (*Charles D. Lawrence* and *Martin T. Baldwin,* special attorneys, of counsel), for the United States.

[Oral argument Oct. 5, 1921, by Mr. Levett and Mr. Lawrence.]

Before DE VRIES, Presiding Judge, and SMITH, BARBER, and MARTIN, Associate Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise involved in this case was imported from China and was invoiced as "silk waste." It was described by the examiner as "waste silk which has been degummed by a process of boiling."

It was assessed with duty at the rate of 20 cents per pound as silk partially manufactured, under paragraph 311 of the tariff act of 1913.

The importers protested, claiming free entry for the merchandise as silk waste under paragraph 599 of the act.

The board overruled the protest, and the importers appealed.

A copy follows of the respective paragraphs above cited, together with paragraph 600, which should be read therewith:

311. Silk partially manufactured from cocoons or from waste silk and not further advanced or manufactured than carded or combed silk, and silk noils exceeding two inches in length, 20 cents per pound.

(Free list.)

599. Silk cocoons and silk waste.

600. Silk, raw, in skeins reeled from the cocoon, or rereeled, but not wound, doubled, twisted, or advanced in manufacture in any way.

It appears from the testimony that the silk in question is derived from the cocoons of cultivated silkworms and is produced as a by-product when the cocoons are reeled into filature or raw silk. In the course of this operation broken filaments and pieces of cocoon fall to the ground as waste, and this waste is afterwards picked up and becomes the raw material from which spun silk is manufactured. In the original cocoons the silk is coated and held together by a natural gum; the reeling process therefore proceeds with the cocoons submerged in hot water. This softens the gum, thus permitting the filatures to be unwound from the cocoon; it also removes a good deal of the gum, but not all of it.

The present article consists of the waste above described; that is to say, the short filaments of raw silk dropped in the reeling operation or produced from broken parts of cocoons. When imported it is in the same condition as when first gathered together, except that it has been subjected to a washing or boiling process before importation. That operation is described by the only witness in the case in

the following words: "It simply means that a Chinaman goes through the reeling plant and collects a lot of this in a basket and dumps it into a vat and lets it boil overnight. *. * * It is a boiling process just as the washerwoman boils the shirts on Monday morning." This treatment results in removing part or all of the natural gum which may still adhere to the broken filaments composing the waste, as well as any foreign impurities which may be mixed therewith The witness was somewhat indefinite in his statements as to whether the waste would require to be further boiled off in this country before it could be carded and combed for spinning into spun silk. In fact his testimony would fairly bear either interpretation upon that point. However, he said that the boiling operation increased the value of the material "only to the extent of the very slight labor involved."

It must be conceded that the merchandise is entitled to free entry under the enumeration of silk waste in paragraph 599, supra, unless it has lost its right to that classification by reason of the boiling operation aforesaid. The contention of the Government is that the boiling was one of the manufacturing operations whereby the silk waste was to be manufactured into spun silk, and, consequently, that when boiled it was no longer waste silk but had become "silk partially manufactured * * * from waste silk," and accordingly was dutiable under paragraph 311, supra. This contention of the Government was sustained by the board.

We are constrained to disagree with the board's decision, for, according to our view the boiling of the waste silk was not a manufacturing operation which converted it into partly manufactured spun silk, but was simply a cleansing treatment which advanced its condition as waste silk without converting it into anything else. After that treatment the article assumed no new name, nor was it capable of nor appropriated to any new or different use, nor had it changed its character in any substantial particular. It should be observed that the dutiable provision under which the assessment was made does not apply to "waste silk, advanced in condition," but to "silk partially manufactured * * * from waste silk," which in this case would necessarily signify spun silk partially manufactured. The present article, however, more correctly responds to the description of cleansed or degummed waste silk rather than that of partially manufactured spun silk.

In support of this conclusion we cite the following authorities which enunciate two general rules having application hereto; first, that where a dutiable provision names an article without terms of limitation all forms of the article are thereby included unless a contrary legislative intent otherwise appears; and, second, as a general

rule the mere cleansing of an article is not regarded as a partial manufacture of it into a new or different article.—Salomon case, T. D. 27289, G. A. 6339, cited and approved in United States v. Salomon (1 Ct. Cust. Appls., 246; T. D. 31277); Neuman & Schwiers Co. v. United States (4 id., 64; T. D. 33310); Schade & Co. v. United States (5 id., 465; T. D. 35002); United States v. Maine Central Railway Co. (7 id., 114; T. D. 36427); Hartranft v. Weigmann (121 U. S., 609).

We think, therefore, that according to the general rule above stated the present material remained simply silk waste after it was boiled, and that it was not thereby converted into an article of "silk partially manufactured from * * * waste silk." We find support furthermore for this conclusion in a carefully prepared letter of instructions issued by the Treasury Department to the customs service on December 15, 1911, published as T. D. 32085. The letter dealt primarily with the subject of silk noils, which are short silk fibers left over when silk waste is manufactured into spun silk. The letter, however, covered also the classification of silk partially manufactured from silk waste, being the classification which is under consideration in this case. We quote from the letter as follows:

Silk noils constitute a by-product in the manufacture of spun silk from waste silk or pierced cocoons. The waste silk or cocoons are (1) sorted, (2) boiled, (3) washed by machinery, and (4) hackled. Silk in this condition constitutes "silk partially manufactured from cocoons or from waste silk," and is dutiable at the rate of 35 cents per pound under paragraph 396 of the tariff act.

The foregoing letter of explanation and instruction deserves especial consideration, since soon after its publication Congress enacted the tariff revision of 1913. And in that revision the language of the act of 1909 which was interpreted in the letter was reenacted without change, except that a dutiable eo nomine provision for "silk noils exceeding two inches in length" was added thereto, in apparent ratification of the position taken by the department in its letter. We may therefore say that the definition given by the foregoing departmental letter has received in a measure the implied approval of Congress also. It is important to note that according to the letter aforesaid waste silk becomes dutiable under the enumeration of "silk partially manufactured from cocoons or from waste silk" when it has been (1) sorted, (2) boiled, (3) washed by machinery, and (4) hackled. This definition plainly contemplates a substantial change in the condition of waste silk before it is regarded as advanced to the dutiable enumeration of partially manufactured silk. The hackling of the waste silk as mentioned in the letter, or any partial or preparatory combing or carding of the material, or complete carding and combing, would respond to this requirement. The present material, however, has not been washed by machinery nor hackled, nor partially nor fully carded or combed, nor treated by any process similar or

equivalent thereto. The boiling operation described by the witness should not be given the effect of removing the article from the dutiable status of waste silk and advancing it to that of an article partially manufactured therefrom.

We conclude, therefore, that the merchandise in question was entitled to free entry as silk waste. The decision of the board overruling the protest is accordingly reversed, and the case is remanded.

*Reversed.*