UNITED STATES *v.* H. REEVE ANGEL & Co., INC. (No. 4508) [1]

---

[1] C. A. D. 324.

United States Court of Customs and Patent Appeals, January 7, 1946

*Paul P. Rao*, Assistant Attorney General (*Sybil Phillips* and *Joseph F. Donohue*, special attorneys, of counsel), for the United States.

*Brooks & Brooks* (*Frederick W. Brooks* of counsel) for appellee.

[Oral argument December 5, 1945, by Mr. Donohue and Mr. Frederick W. Brooks]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CON-NELL, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

The Government has appealed from the judgment of the United States Customs Court, Second Division, C. D. 906, which held an importation consisting of certain disks of filtering paper, which had been classified by the Collector of Customs at the port of New York under the provisions of paragraph 1413 of the Tariff Act of 1930 as "Paper cut or stamped into designs or shapes, etc." dutiable at 30 per centum ad valorem, to be properly classifiable as claimed by the importer, appellee here, as filtering paper dutiable at 2½ cents per pound and 7½ per centum ad valorem, under the provisions of paragraph 1409 of said tariff act as modified by the trade agreement with the United Kingdom, T. D. 49753.

The involved paragraphs read as follows:

PAR. 1409. Jacquard designs on ruled paper, or cut on Jacquard cards, and parts of such designs, 35 per centum ad valorem; hanging paper, not printed, lithographed, dyed, or colored, 10 per centum ad valorem; printed, lithographed, dyed, or colored, 1½ cents per pound and 20 per centum ad valorem; wrapping paper not specially provided for, 30 per centum ad valorem; blotting paper, 30 per centum ad valorem; filtering paper, 5 cents per pound and 15 per centum ad valorem; paper commonly or commercially known as cover paper, plain, uncoated, and undecorated, 30 per centum ad valorem; paper not specially provided for, 30 per centum ad valorem.

The trade agreement with the United Kingdom fixed the duty on filtering paper, valued at 75 cents or more per pound, at the rate claimed by appellee.

PAR. 1413. *Papers* and paper board and pulpboard, including cardboard and leatherboard or compress leather, *embossed, cut, die-cut, or stamped into designs or shapes, such as initials, monograms, lace, borders, bands, strips, or other forms*, or cut or shaped for boxes or other articles, plain or printed, but not lithographed, and not specially provided for; paper board and pulpboard, including cardboard and leatherboard or compress leather, plate finished, super-calendered or friction calendered, laminated by means of an adhesive substance, coated, surface stained or dyed, lined or vat-lined, embossed, printed, or decorated or ornamented in any manner; press boards and press paper, all the foregoing, 30 per centum ad valorem; test or container boards of a bursting strength above sixty pounds per square inch by the Mullen or the Webb test, 20 per centum ad valorem; stereotype-matrix mat or board, 35 per centum ad valorem; wall pockets, composed wholly or in chief value of paper, papier-mâché or paper board, whether or not die-cut, embossed, or printed lithographically or otherwise; boxes, composed wholly or in chief value of paper, papier-mâché or paper board, and not specially provided for; manufactures of paper, or of which paper is the component material of chief value, not specially provided for, all the foregoing, 35 per centum ad valorem; tubes wholly or in chief value of paper, commonly used for holding yarn or thread, if parallel, 1 cent per pound and 25 per centum ad valorem; if tapered, 3 cents per pound and 35 per centum ad valorem.    [Italics ours.]

It was conceded at the trial that the merchandise is filtering paper and is valued at more than 75 cents per pound, and the sole question involved there as here is whether or not the provision of paragraph 1413 for "Papers * * * cut * * * or stamped into designs or shapes, etc." is more specific than the provision of paragraph 1409 for filtering paper.

The disks are in two sizes, one six inches in diameter and the other five inches. The latter have been washed with hydrochloric and hydrofluoric acid. This difference, however, does not differentiate the disks for tariff purposes.

It appears that filtering paper of the types involved is imported in the form of disks and also in the form of sheets, but not in rolls. Most of it, when imported in sheets, is cut into disks, as it has no commercial use in sheet form. It also appears that merchandise such as here imported has been classified, since 1919, as filtering paper, and has been used exclusively in chemical laboratories.

The trial court reviewed several cases in which filtering paper was involved, including that of *United States* v. *W. X. Huber Co.*, 30 C. C. P. A. (Customs) 183, C. A. D. 231, in which it was held that certain disks of tissue paper invoiced as "coffee filter papers" and classified by the collector at the port of Los Angeles under the provisions of paragraphs 1413 and 1404 of the Tariff Act of 1930 as tissue paper cut to shapes, was properly dutiable under the provisions of paragraph 1413.

That case was relied upon by the Government at the trial as being *stare decisis* of the issue, but the trial court declined to agree, stating that it was necessary to hold the *eo nomine* use designation of filtering

paper in paragraph 1409 to be more specific than what it stated to be the more general descriptive provision in paragraph 1413 for papers cut into shapes. The court held this point not to have been discussed in the *Huber* case, and for that reason the trial court stated it was reluctant to follow that decision.

Appellant contends the trial court erred in not following the decision of the *Huber* case; that the tariff history of the involved paragraphs supports the collector's classification of the instant merchandise; that the provision for papers cut to shape is more specific than the *eo nomine* designation for filtering paper; and that no substantial evidence appears of long-continued uniform administrative practice with respect to the classifying of the instant merchandise.

Appellee traverses the contentions of appellant and further urges that the doctrine of legislative approval of judicial decision is applicable here for the reason that on January 6, 1911 (Abstract 24511, 20 Treas. Dec. 14), the Board of General Appraisers (now the United States Customs Court) held filtering paper disks dutiable as filtering paper under paragraph 410 of the tariff act of August 5, 1909. Appellee states that the proviso contained therein, as far as is material to this case, is the same as paragraph 1413, *supra*. No appeal was taken from that decision, and appellee states that while it was presumptively known to Congress no change was made in the provision for filtering paper in the succeeding tariff act of October 3, 1913, or the Tariff Acts of 1922 and 1930.

While an *eo nomine* designation by use outweighs for classification purposes a merely descriptive provision, and therefore is strongly persuasive of the intent of Congress, nevertheless it cannot be applied to merchandise which it appears Congress has intended should be otherwise classified. *Smillie & Co.* v. *United States*, 11 Ct. Cust. Appls. 199, T. D. 38966.

In the *Huber* case, *supra*, we discussed at length the tariff provisions for paper cut into forms, the first of which appeared in the tariff act of August 5, 1909 in the form of a proviso to paragraph 415 of that act. We further discussed cases involving the classification of cards, filtering and other papers which arose under the provisions of that act, and the "Notes on Tariff Revision," 1909, so that we deem it unnecessary to parallel those discussions in this opinion. Suffice it to say we adhere to the law as announced in that decision and hold that it is *stare decisis* of the present issue.

We see no merit in the contention of appellee concerning the doctrine of legislative approval of judicial determination. Abstract 24511, 20 Treas. Dec. 14, was under the tariff act of August 5, 1909. There is a difference between the proviso of paragraph 415 of that act and paragraphs 332 of the act of October 3, 1913, and 1413 of

the Tariff Act of 1930, in that the proviso in the act of August 5, 1909, was for "paper" cut to shape, while in the latter two paragraphs the provision is for "papers." In our opinion the change from the singular to the plural clearly indicates that the latter includes all papers cut to shape described in the tariff act of October 3, 1913 and the Tariff Act of 1930 excepting those which are specifically excluded. *United States* v. *W. X. Huber Co., supra.* Therefore the doctrine contended for by appellee is not applicable.

Appellee argues that the instant merchandise is no more cut to shape than filtering paper imported in rectangular form, and that therefore if the classification of the collector be upheld there would be no room for the operation of paragraph 1409. We cannot see any merit in such contention. All paper is made in rectangular form, whether it be in rolls or in sheets, and a cutting thereof into smaller rectangles would merely change its size and not its shape or form.

We agree with appellant that the record does not establish long-continued uniform practice in the classification of the instant merchandise. The evidence relied upon is merely that given by two witnesses, each of whom testified as to his own experience with respect to similar merchandise being classified in the ports of New York and Chicago. Neither could state more than that his own merchandise had been classified as filtering paper by the customs officials. The collectors at the ports of New York and Chicago were not called, and an examiner at the port of New York was unable to testify how the collector classified papers such as the instant merchandise. *United States* v. *Mills & Gibb*, 8 Ct. Cust. Appls. 422, T. D. 37667.

For the reasons herein set forth, the judgment appealed from is *reversed.*