C. J. TOWER & SONS *v.* UNITED STATES (No. 4998)[1]

United States Court of Customs and Patent Appeals, January 6, 1960

*Perry S. Patterson* (*Michael Stramiello, Jr.*, of counsel) for appellant.

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Murray Sklaroff*, trial attorney, of counsel), for the United States.

*Barnes, Richardson & Colburn* (*Norman C. Schwartz* and *James F. Donnelly* of counsel) *amicus curiae.*

[Oral argument December 3, 1959, by Mr. STRAMIELLO, Jr., Mr. SKLAROFF and Mr. DONNELLY]

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[2]

WORLEY, Chief Judge, delivered the opinion of the court:

This appeal is from the judgment of the United States Customs Court, First Division, C.D. 2062, overruling the importer's protests

---

[1] C.A.D. 734.

[2] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of* Judge O'Connell, pursuant to the provisions of Title 28, United States Code, Section 294(d).

and sustaining the collector's classification of merchandise as vanillin under paragraph 28(a) of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739. It is contended by the importer, here as below, that the merchandise should be classified as a combination or mixture of chemical compounds not specially provided for, under paragraph 5 or, alternatively, as a nonenumerated manufactured article under paragraph 1558 of the 1930 Act as modified *supra*. The pertinent statutory provisions read:

28(a) Vanillin, from whatever source obtained, derived, or
 manufactured_____ 3½¢ per lb.
 and 22½%
 ad val.

5 All chemical elements, all chemical salts and compounds, all
 medicinal preparations and all combinations and mixtures of
 any of the foregoing, all the foregoing obtained naturally or
 artificially and not specially provided for_____ 12½% ad val.

It is stipulated that the merchandise, known as "Lioxin," consists of 96 to 97 percent vanillin and 3 to 4 percent acetovanillone, with traces of other materials, and does not conform to the specifications for color, odor, taste, and melting point set forth for vanillin in the U.S.P. (United States Pharmacopeoia). It is further stipulated that the chief uses of U.S.P. vanillin are, and have been since a time prior to 1930, in flavoring food and in perfumery.

The evidence establishes that both vanillin and Lioxin have a common origin, being produced from lignin contained in the waste sulphite liquor of wood pulp. Lioxin is first produced by a series of steps not material here, and a purification may be performed to produce U.S.P. vanillin. It also appears that there are substantial differences in color, form, and odor between Lioxin and U.S.P. vanillin, and that the former is not suitable for use in flavoring and perfumery and is not commercially used for those purposes. On the other hand, when Lioxin is used chemically it is very similar to U.S.P. vanillin, and since it is substantially cheaper, it is used commercially where a vanillin reaction is desired as, for example, in the synthesizing of chemical products. For such uses, U.S.P. vanillin would also be suitable, but is not usually employed because of its higher cost.

It thus appears that Lioxin is a crude or impure form of vanillin which is not suitable for the principal purposes for which the purer U.S.P. vanillin is used, but which has substantial commercial uses in which its vanillin component is the only useful factor. The issue here is whether such a product falls within the meaning of vanillin as that word is used in paragraph 28(a).

We think it clear that a product containing 96 to 97 percent of vanillin would, within the common meaning, be considered as vanil-

lin. It is noted that the Second Edition of the Condensed Chemical Dictionary, published in 1930, under the word "Vanillin" lists both U.S.P. and "Technical" grades, thus indicating that there is a product less pure than U.S.P. which is called vanillin.

 As the Customs Court observed, it is well settled that, in the absence of a showing of a contrary legislative intent, an *eo nomine* provision for an article without terms of limitation includes all forms of the article. *Smillie & Co.* v. *United States*, 11 Ct. Cust. Appls. 199, T.D. 38966; *United States* v. *Page N. Goffigon*, 43 CCPA 172, C.A.D. 625, and cases there cited. There being no evidence here of a contrary legislative intent, Lioxin appears to be included within the tariff provision for vanillin, notwithstanding the fact that it includes three or four percent of impurities.

Appellant contends that the evidence establishes a commercial meaning of "vanillin" which is limited to the U.S.P. article and hence excludes Lioxin. In support, appellant relies on the testimony of four witnesses who stated that they had extensive dealing with vanillin at least as early as 1930, and that the term was applied only to the U.S.P. product. All those witnesses, however, were connected with the perfumery and/or flavoring industry and hence would not have been concerned in their business with a product such as Lioxin or "technical vanillin," which admittedly cannot be used in those industries. The fact that such witnesses knew of no product called vanillin other than the one answering U.S.P. requirements does not establish that such a product did not exist in other industries. We therefore agree with the Customs Court that the testimony is insufficient to establish that "vanillin" has, or had in 1930, a general, uniform, and definite commercial meaning differing from its common meaning.

Moreover, if it be assumed, as appellant appears to contend, that U.S.P. vanillin was the only form in commercial use in 1930, that would not demonstrate that if and when a slightly less pure form was placed on the market the term vanillin would not properly apply to it. Tariff laws are made for the future as well as the present and are intended to embrace new articles as they are developed.

Appellant also argues that the small amount of acetovanillone found in Lioxin is not an impurity but a useful ingredient, and that, accordingly, Lioxin is a mixture of synthetic odoriferous or aromatic chemicals and hence not classifiable under paragraph 28(a). We agree with the Customs Court that the term "mixture" is not applicable to an accidental commingling such as is present in Lioxin. While two witnesses testified that the presence of acetovanillone in Lioxin might be desirable for some uses, no specific use was suggested in which that would be true. On the contrary, the clear purport of the evidence as a whole is that Lioxin is used to obtain the same chemical reactions as U.S.P. vanillin, and for that purpose acetovanillone would be

merely an impurity. The fact that acetovanillone may be used alone for some other purposes does not alter that situation.

In our opinion the collector and the Customs Court properly found that the merchandise is vanillin within the meaning of paragraph 28 (a) of the Tariff Act of 1930.

The judgment is *affirmed*.