(C.D. 2528)

WINTER, WOLFF & CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided April 14, 1965)

*Stein & Shostak* (*S. Richard Shostak* and *Marjorie M. Shostak* of counsel) for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Harold L. Grossman*, trial attorney), for the defendant.

Before RAO and FORD, Judges

FORD, Judge: Upon importation, certain so-called hinge-hanger bolts with nuts attached, which form the subject of the above-enumerated protest, were classified by the collector of customs as articles or wares, not specially provided for, composed wholly or in chief value of iron or steel, in paragraph 397 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 397), as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, and were assessed with duty at the rate of 20 per centum ad valorem.

It is the contention of plaintiff that said merchandise should properly have been classified within the provision for "Bolts, with or without threads or nuts, * * * of iron or steel" in paragraph 330 of said tariff act (19 U.S.C. § 1001, par. 330), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, and subjected to duty at the rate of ½ cent per pound.

As succinctly stated in the brief of plaintiff, "Since the provision for bolts of iron or steel in Par. 330 of the Tariff Act is obviously more specific than the catch-all provision in Par. 397, for articles or wares not specially provided for, wholly or in chief value of metal, the sole issue in this case is whether the hinge-hanger bolts imported herein come within the scope of the *eo nomine* provision for 'bolts' in Par. 330 of the Tariff Act of 1930."

In addition to the testimony of Malvin Levine, sales manager for the plaintiff-importer, who appeared on behalf of plaintiff, the following five plaintiff's exhibits were received in evidence:

Exhibit 1—a representative sample of the hinge-hanger bolts in issue.

Exhibit 2—a foundation bolt, which defendant conceded is subject to classification within the *eo nomine* provision for "bolts" in paragraph 330.

Exhibit 3—page 5 of catalog of Ataka & Co., Ltd., illustrating a toggle bolt, which defendant conceded is subject to classification within the *eo nomine* provision for "bolts" in paragraph 330.

Exhibit 4—a diagram prepared by Witness Levine, illustrating the manner in which the imported hinge-hanger bolt is used to fasten a gate to a gatepost.

Exhibit 5—pages 20 and 21 of the catalog of Ataka & Co., Ltd. On page 20, a hinge-hanger bolt representative of those in issue is illustrated. On page 21, are shown hanger bolts, which the defendant conceded are subject to classification within the *eo nomine* provision for "bolts" in paragraph 330.

It was the testimony of plaintiff's witness Levine that the merchandise in issue, represented by exhibit 1, is known to him and in the trade as a hinge-hanger bolt and by no other name. He stated, further, that articles such as exhibit 1 are used throughout the United States for the purpose depicted in his drawing (exhibit 4), namely, to fasten a gate to a gatepost. He described the thread on the articles in issue as a "bolt thread" and testified that two nuts are used with each hinge-hanger bolt. Levine stated that hanger bolts of the kind imported are used for the same type of fastening function as are the toggle bolts, illustrated in exhibit 3, which defendant has conceded are subject to classification within the *eo nomine* provision for "bolts" in paragraph 330 of the Tariff Act of 1930, as modified, *supra*, relied upon by plaintiff herein. It was brought out, on cross-examination, that the toggle bolt illustrated in exhibit 3 does not have a flange as does the commodity in issue and, though used for the same purpose, a gate hung on a toggle bolt would not swing. Levine stated that a hinge-hanger bolt, represented by exhibit 1, and incorporated in the diagram, exhibit 4, performs no other function than to be an article upon which a gate is suspended or hung and upon which it swings.

It is upon the record above outlined that a determination of the proper classification of the imported hinge-hanger bolts must rest, the sole question being are said articles "bolts" within the *eo nomine* provision therefor in paragraph 330 of the tariff act.

As correctly stated in the brief of defendant: "It is obvious from an analysis of the evidence in this case that neither party hereto relies upon the rule of commercial designation for the construction of the *eo nomine* provision for bolts in said paragraph 330, *supra*. Consequently, and under well settled principles of Customs Law, the term must be interpreted in accordance with its common meaning."

It has been held in *Smillie & Co.* v. *United States*, 11 Ct. Cust. Appls.

199, T.D. 38966, *Nootka Packing Co. et al.* v. *United States*, 22 CCPA 464, T.D. 47464, and *United States* v. *Page N. Goffigon*, 43 CCPA 172, C.A.D. 625, that, where a dutiable provision names an article without words of limitation, all forms of that article are thereby included, unless a contrary legislative intent plainly appears.

Moreover, the meaning of a tariff term is presumed to be the same as its common or dictionary meaning, in the absence of evidence to the contrary. *August Bentkamp* v. *United States*, 40 CCPA 70, C.A.D. 500, and *United States* v. *C. J. Tower & Sons of Buffalo, N.Y.*, 48 CCPA 87, C.A.D. 770.

It has also been held that, in the absence of an established commercial designation different from the common meaning, the court may resort to any appropriate source of information to aid in arriving at the common meaning of a word.

This court had occasion to consider the *eo nomine* provision for "bolts" in the case of *John L. Westland & Son, Inc., a/c Michael & Co.* v. *United States*, 42 Cust. Ct. 229, C.D. 2091, from which case the following is quoted:

The word "bolts," as used in paragraph 330, as modified, *supra*, must be given its common meaning, no commercial designation therefor having been shown. As stated in the case of *United States* v. *John B. Stetson Co.*, 21 C.C.P.A. (Customs) 3, T.D. 46319—

> * * * The common meaning to be attached to a term or word used by the Congress in a provision of a tariff act is a matter to be determined by the court having the same under consideration. In making this determination the court may rely upon its own understanding of the word or term used, and it may assist its own understanding by reference to the works of standard lexicographers, scientific authorities, the testimony of witnesses, or by such other means as may be available. * * *

Reference to lexicographic authorities discloses the following definitions— Webster's New International Dictionary, second edition:

> **bolt** (bōlt), *n.* * * * 5. A pin or rod, esp. of steel, to fasten or hold something in place, often having a head at one end and a screw thread cut upon the other end. Bolts are given various names according to: (1) The general shape of the head, as *squarehead, slotted, T, eye, ring, etc.* (2) The mode of securing, as *expansion, tap, fox, key, etc.* (3) The use or application, as *carriage, coupling, elevator, hanger, track, stud, stove, etc.* * * * [Italics quoted.]

Audels Mechanical Dictionary:

> **Bolt.**—1. A pin of iron or brass used to fasten or secure something in place, the bolt generally having a screw thread for a nut at one end and a forged head at the other.

From the foregoing definitions, it appears that the word "bolt" is defined without limitation as to length and we see no sound reason for holding articles like illustrative exhibit 2 to be any the less bolts than articles such as illustrative exhibit 1 which the parties hereto agreed come within the *eo nomine* tariff classification therefor.

If it were the intent of Congress to limit the provisions of paragraph 330 of the tariff act to bolts of particular lengths, it undoubtedly would have so specified. It is interesting to note that Congress specifically provided in the next succeeding paragraph of the tariff act (paragraph 331) for a distinction in classification predicated on length applicable to nails, spikes, tacks, brads, and staples. In the absence of any showing that it was the congressional intent to limit the provision for bolts in paragraph 330, as modified, *supra*, to such articles when of a particular length, we believe the well-established principle of law applies that where a dutiable provision names an article without terms of limitation all forms of the article are thereby included. *Smillie & Co.* v. *United States*, 11 Ct. Cust. Appls. 199, T.D. 38966.

It may be noted that, in the Webster's New International Dictionary, second edition, referred to in the *Westland*, case, *supra*, there are a number of illustrations of bolts which point up graphically the great variety of shapes, forms, and applications which such articles may take. It is worthy of note, also, that said definition refers specifically to "hanger" bolts.

Defendant herein, in its brief, contends that the article in issue is something more than a bolt—that it is a combination of a bolt and a hinge. The cases cited in support of said contention have been given due consideration.

We incline, however, to the principle of decision in the case of *H. T. Kennedy Co., Inc.*, and *Daniel F. Young, Inc.* v. *United States*, 32 Cust. Ct. 124, C.D. 1593, wherein certain steel spikes, classified as articles or wares, not specially provided for, composed of steel, in paragraph 397 of the Tariff Act of 1930, as modified, were held to be properly subject to classification within the *eo nomine* provision for "spikes" in paragraph 331 of said act, as modified The record therein discloses that the article is of the spring-type design, formed from a single piece of steel rod, nine-sixteenths of an inch in diameter, the steel bent in such a manner as to form two legs of equal length, having a U-shaped loop extending downward at a slight angle between the legs. The record also discloses that the device there in issue was an improved form of railway spike which not only served to fasten a rail to a tie but also served to overcome the tendency of a rail to creep or to slide endwise.

In the course of its opinion, in the *Kennedy* case, *supra*, the court stated:

Defendant contends that because the subject merchandise serves both as a spike and as an anchor, and if found to be satisfactory and successful will finally eliminate the use of an anchor, it must be considered as something more than a spike, citing *Krueger & Hoch* v. *United States*, 2 Cust. Ct. 68, C.D. 88. In that case, this court held that articles described as "small pieces of metal, having a point, a shoulder, and a screw thread," used in fastening picture mouldings to the wall, were properly dutiable as articles of metal rather than as iron or steel nails, spikes, tacks, brads, or staples, in paragraph 331 of the Tariff Act of 1930, *supra*. From an examination of the samples in that case, the court concluded that the article in controversy was a combination of a nail and a

screw and "since it is not *eo nomine* provided for it is properly dutiable at the rate of 45 per centum ad valorem under said paragraph 397 as a manufacture of metal * * *."

It is stated in the brief of defendant that—

> The case of *C. S. Emery & Co.* v. *United States*, 64 Treas. Dec. 1135, Abstract 26313 (1933), cited by plaintiff in its brief, at pages 8–10, is interesting but not applicable herein. The *Krueger* case, *supra*, apparently modifies the *Emery* case although it does not so state. * * *

We are not in accord with this view, inasmuch as in the *Kruger* case, *supra*, the article before the court was neither a nail which served the purposes of a screw, nor was it a screw which performed the functions of a nail. It was, in fact, the joining of two articles into one, separated by a metal shoulder, the screw side of the article to be inserted into pieces of moulding, and the opposite nail portion used to affix the moulding to walls, and was clearly, as held by the court, a combination of two articles, to wit, a nail and a screw.

However, in the *Emery* case, *supra*, the merchandise in issue was not a combination of articles but was a spike with a spirally cut shank, and the court was of the opinion that the general provision for spikes included all forms of the article. Consequently, there would seem to be no conflict between the *Emery* and *Krueger* cases, as urged by the defendant.

\* \* \* \* \* \* \*

We are satisfied that this is not a case where the principle urged by defendant that the imported commodity is "something more than" a spike controls. The article before us is nothing more or less than an improved spike which, due to the genius of the inventor, performs a dual function. In other words, it is not, as in the *Krueger* case, *supra*, the combination of two articles, each one of which performed its separate function; it is an individual unit, namely, a spike. It is a matter of no consequence that as a result of this ingenious device it may dispense with the use of railway anchors.

As in the *Kennedy* case, *supra*, so, too, here we are satisfied the contention of defendant that the imported article in controversy is something more than a bolt is without merit.

Based upon the various authorities referred to, *supra*, and after consideration of the evidence presented and the cases cited by the parties in their briefs, it is our opinion that the hinge-hanger bolts in issue come within the common meaning of the term "bolt," and we hold said commodity, being *eo nomine* provided for within the provisions of paragraph 330, is properly classifiable thereunder and subject to duty at the rate of ½ cent per pound, as claimed by plaintiff.

Judgment will issue in accordance with the views above expressed.