(C.D. 3443)

WATERS SHIPPING COMPANY *v.* UNITED STATES

United States Customs Court, Second Division

(Decided May 7, 1968)

*John Bright Hill* for the plaintiff.

*Edwin L. Weisl, Jr.*, Assistant Attorney General (*Charles P. Deem* and *Alfred A. Taylor, Jr.*, trial attorneys), for the defendant.

Before Rao and Ford, Judges

Rao, Chief Judge: The protest here involved presents for determination the question of what is the proper tariff classification of an importation of metal articles described on the invoice as "Bright Felt Roofing Nails".

The collector of customs at the port of entry classified this merchandise as metal articles or wares, not specially provided for, within the provisions of paragraph 397 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, and, accordingly, assessed duty thereon at the rate of 19 per centum ad valorem.

It is the contention of the plaintiff that these articles are more specifically provided for in paragraph 331 of said act, as so modified, as iron and steel nails, not specially provided for, which are dutiable at the rate of 1.25 cents per pound.

The language of the competing provisions reads as follows:

Paragraph 397 of the Tariff Act of 1930, as modified by T.D. 54108—

Articles or wares not specially provided for, whether partly or wholly manufactured:

\*          \*          \*          \*          \*          \*          \*

Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

\*          \*          \*          \*          \*          \*          \*

Other, composed wholly or in chief value of iron, steel, brass, bronze, zinc, or aluminum \* \* \* _____ 19% ad val.

Paragraph 331 of the Tariff Act of 1930, as modified by T.D. 54108—

Horseshoe nails, and other iron or steel nails, not specially provided for_____ 1.25¢ per lb.

A sample of the merchandise at issue is in evidence as plaintiff's exhibit 1. It appears to consist of a steel shank and a disc. The shank, about 1½ inches long, is serrated and tapered, with a point at one end and a head at the other. The head end has been inserted into the center

of a 1-inch disc, and protrudes about $\frac{1}{16}$ of an inch beyond the surface thereof.

According to the record, the article is composed in chief value of steel. The disc and shank are manufactured separately but permanently joined. In that form, the article is used primarily for fastening builders' felt to wood sheathing in building operations.

By reason of this use and the appearance of the article in issue, it is the contention of the plaintiff that the item is a nail as commonly understood.

The defendant asserts, however, that both by use and appearance this article is a fastening device which is something more than a nail and, therefore, it cannot be covered by the provision relied upon by plaintiff.

It is thus apparent that determination of the controversy in this instance depends upon the meaning of the term "nail" and a consideration of whether or not the subject merchandise falls within that meaning. In this instance, there is no question of commercial designation; it is common meaning which controls. Common meaning is a matter of law to be determined by the courts. *United States* v. *Florea & Co., Inc.*, 25 CCPA 292, T.D. 49396; *United States* v. *O. Brager-Larsen*, 36 CCPA 1, C.A.D. 388. In refreshing its recollection with respect to common meaning, the court may refer to standard works of lexicographic or scientific authorities. *United States* v. *John B. Stetson Co.*, 21 CCPA 3, T.D. 46319.

This court in the case of *Fastening Devices, Inc.*, and *Rohner Gehrig & Co., Inc.* v. *United States*, 40 Cust. Ct. 345, C.D. 2004, had before it for consideration, *inter alia*, certain articles which had been cadmium plated and were claimed to be steel nails, not specially provided for, in paragraph 331 of the Tariff Act of 1930, the same paragraph invoked by the plaintiff in the instant case. In addressing itself to the common meaning of the term "nail" in *Fastening Devices, supra*, this court quoted the following definitions of that term:

Funk & Wagnalls New Standard Dictionary (1941) defines the term "nail" as follows:

nail, *n*. 4. A piece of metal consisting of a slender body, shank, or tang, usually tapering toward or pointed at one end and having a head at the other end, used for driving into or through wood or other material to fasten one piece to another, or to serve as a projecting pin upon which things may be hung. * * *

Webster's New International Dictionary (1930 ed.) defines "nail" as follows:

nail, *n*. * * * 3. A more or less slender, usually pointed piece of metal (rarely of wood—cf. TREENAIL), generally with a head intended to be struck by a hammer, used for driving into or through wood or other material to hold two or more pieces to-

gether, as a support from which pictures, etc., may be hung, or for ornamental purposes. Cf. BRAD, SPIKE, TACK. Nails are variously named from their use, shape, size, etc., as basket, boat, chair, clout, floor, shingle, chisel-pointed, corrugated, diamond, fourpenny (see PENNY), tenpenny, horseshoe, wrought, wire, cut, finishing, galvanized, tinned, upholsterer's, etc.

After quoting the above definitions, the court observed as follows:

The samples of the merchandise in question are potent witnesses. In appearance, the items presently being considered closely resemble many of the common, ordinary nails; they are used for driving into wood or other material to fasten one piece to another; they differ from the common, ordinary type of nails only in that they are made of a higher quality of material. A nail does not cease to be a nail simply because it is made of high-quality material. While it is true that many of these items are inserted or driven into material, such as wood, concrete, bricks and steel, by means of a powder-actuated gun, rather than by means of a hammer, this fact, in and of itself, would not be sufficient to deny these items of merchandise classification as nails. The method of inserting the nails does not change their character as nails. They are nails when driven manually, and they remain nails when driven by a powder-actuated gun.

The evidence in the present case demonstrates convincingly that the purpose of the merchandise at issue is to join or fasten wood and other material, such as builders' felt, which is the purpose or function referred to in the cited definitions.

The description of a nail contained in the foregoing lexicographic authorities is reflected in the characteristics of the sample article here in evidence. It has a steel shank pointed at one end, headed on the other. Although the shank protrudes through the center of the metal disc, this modification apparently provides greater fastening ability and is not inconsistent with the defined function of the term "nail" as outlined. Certainly the modification does not in any way deny the unmistakable conclusion that the article in question is a "nail" within its common meaning.

In the case of *C. J. Tower & Sons of Buffalo, Inc.* v. *United States*, 57 Cust. Ct. 20, C.D. 2718, which involved spirally convoluted steel articles without a head or point measuring 11¾ inches in length and classified as steel bars under paragraph 304 of the Tariff Act of 1930, as modified, but claimed under the provisions of paragraph 331 of said act, as modified, as nails or spikes, this court held that the merchandise there at issue did not possess the indispensable characteristics of the common conception of nails even though the common meaning thereof sets forth no single indispensable characteristic of a nail.

In this instance, the subject articles manifestly portray both individual characteristics and enumerated features of a nail. The size, shaft, head and appearance typify the article at bar as a nail.

Moreover, the provision relied upon by the plaintiff is unqualified except for the words "not specially provided for" and, therefore, is subject to the rule of construction which provides that where a dutiable provision names an article without terms of limitation all forms of the article are thereby included, unless a contrary legislative intent, judicial decision, or administrative practice to the contrary appears. *Smillie & Co.* v. *United States*, 11 Ct. Cust. Appls. 199, T.D. 38966; *United States* v. *Page N. Goffigon*, 43 CCPA 172, C.A.D. 625; and *Crosse & Blackwell Co.* v. *United States*, 36 CCPA 33, C.A.D. 393. This application of construction of tariff provisions to the present article as well as a visual examination thereof dictates that the subject merchandise should be classified within the *eo nomine* designation for steel nails, not specially provided for.

Based upon the facts in this case, including a careful examination of the sample in evidence, we hold the merchandise at bar to consist of nails within contemplation of paragraph 331 of the Tariff Act of 1930, as modified, *supra*, and, accordingly, dutiable at the rate of 1.25 cents per pound. The claim in the protest to that extent is sustained.

Judgment will be entered accordingly.