(C.D. 4059)

A. L. LIEBMAN & SON, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided August 7, 1970)

*Lane, Young & Fox* (*James G. McGoldrick* and *William H. Fox* of counsel) for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Sheila N. Ziff* and *John A. Winters*, trial attorneys) for the defendant.

Before RAO, FORD, and NEWMAN, Judges

NEWMAN, Judge: These two consolidated protests involve the proper rate of duty on merchandise invoiced as "STEEL SPADE BOLTS," and imported from Japan during the period from January through April 1966. In two of the four entries covered by the protests the merchandise was classified by the Government as fittings and mountings suitable for furniture under item 647.03 of the Tariff Schedules of the United States (TSUS), while in the other two entries the same merchandise was classified as "Other" articles of iron or steel under item 657.20, TSUS. All four entries were liquidated at the rate of 19 per centum ad valorem, which was the appropriate rate under the respective classifications. Respecting this dual classification of the imported merchandise the defendant states: "[I]f the record here suffices to establish affirmatively that classification under item 647.03 was correct, it necessarily follows that the classification under item 657.20, a less specific provision, should not be affirmed." (Brief, p. 1.)

Plaintiff claims that the articles are properly dutiable at the rate of 0.5 cent per pound under the provision for bolts of iron or steel in item 646.54, TSUS.[1] For reasons explained below, that claim is sustained.

THE STATUTES INVOLVED

Tariff Schedule of the United States, Schedule 6, Part 3:

Classified under:

> Hinges; and fittings and mountings not specially provided for, suitable for furniture, doors, windows, blinds, staircases, luggage, vehicle coach work, caskets, cabinets, and similar uses; all the foregoing, of base

---

[1] Plaintiff's alternative claims under items 646.40 and 646.41 were abandoned at the trial (R. 3).

metal, whether or not coated or plated with
precious metal:
> Not coated or plated with precious
> metal:
>> Of iron or steel, of aluminum, or of
>> zinc:
>>> \* \* \* \* \* \* \*

647.03 Other _____ 19% ad val.

>>> \* \* \* \* \* \* \*

Articles of iron or steel, not coated or plated
with precious metal:
> Cast-iron articles, not alloyed:
>> \* \* \* \* \* \* \*
> Other articles:
>> \* \* \* \* \* \* \*

657.20 Other_____._____ 19% ad val.

Claimed under:

Bolts, nuts, studs and studding, screws \* \* \*:
> Of iron or steel:

646.54 Bolts and bolts and their nuts im-
ported in the same shipment_____ 0.5¢ per lb.

## I.

### MOTION TO AMEND PROTEST No. 67/76484

Initially, we shall consider an issue raised by the parties concerning the pleadings. In protest 67/76484 plaintiff challenges the assessment of duty on three entries of "steel spade bolts" at the rate of 19 per centum ad valorem under *item 657.20*. It appears that in two of the entries covered by the protest, the "steel spade bolts" were in fact classified under item 657.20, but in the third entry the classification was under *item 647.03*. Although the merchandise was classified under two different provisions, it was all assessed with duty at the rate of 19 per centum ad valorem which was the appropriate rate under both items 657.20 and 647.03.

At the trial, counsel for plaintiff orally moved to amend the protest "so as to cover not only the common rate but both item numbers which are indicated in the three entries" (R. 7–8). The Government objected to the proposed amendment on the ground that it would add new merchandise to the protest "which is not jurisdictionally possible" (R. 9). The motion was taken under advisement by the court and is now before us for determination.

In its post-trial brief, defendant does not urge the objection made at the trial. Rather, the Government now argues for denial of plaintiff's motion on the ground that the "steel spade bolts" in all three

entries are covered by the protest, irrespective of whether classified under item 657.20 or item 647.03, and "[t]here is no need to amend the protests [sic]."

It is, of course, fundamental that the amendment of pleadings ordinarily rests within the sound discretion of the court. In the instant case, it is clear (and apparently now conceded by defendant) that the granting of plaintiff's motion would not add any merchandise to the protest that was not originally covered, but would merely correct a technical error. Defendant has not shown that such correction would be prejudicial to it in any manner, and we perceive of no reason why plaintiff should not be permitted to correct the protest by the amendment it sought. Under these circumstances, plaintiff's motion is granted; protest 67/76484 is amended by inserting "and item 647.03" after "19% under item 657.20."

## II.

### The Record

The record consists of the testimony of two witnesses on behalf of plaintiff, and two for defendant. Additionally, plaintiff introduced in evidence five exhibits. Those portions of the record deemed pertinent are referred to below.

## III.

### The Facts

The imported article (exhibit 1) consists of a steel pin or rod having a dome-shaped head at one end, and a flattened spade-like shape with a hole or "eye" in the center at the opposite end. The pin or rod measures $\frac{1}{4}$ inch in diameter and $2\frac{1}{8}$ inches long, measured from the underside of the head to the center of the "eye." The head is $\frac{5}{8}$ inch in diameter and is not slotted. The "spade" portion is $\frac{1}{2}$ inch in length, $\frac{5}{16}$ inch in width, and $\frac{1}{8}$ inch in thickness. The eye in the center of the "spade" is $\frac{1}{8}$ inch in diameter. The article has no threads and is not used with a nut.

Plaintiff sells the merchandise to manufacturers of redwood furniture in the United States. These manufacturers use the fasteners to join or connect the frame of a redwood chair or chaise to a metal "spring assembly" to make the seat, which is covered with a pad or cushion. The "spring assembly" is comprised of coiled springs attached to the ends of five flexible strips of metal, two of which run perpendicular to the other three. Each metal strip is connected at both ends to the coiled springs. These springs, in turn, are hooked to the "eye" of the "spade bolts." One bolt is required for each spring. The "spade bolts" themselves are inserted into the redwood frame through pre-drilled holes, so that the heads are on the outside of the frames

while the spade portions with the "eye" are on the inside of the frame. Thus, the imported articles serve to anchor or hold the "spring assembly" in proper relation to the redwood frame. A redwood frame together with the "spring assembly" and "spade bolts," all connected together, was received in evidence (as exhibit 2) to demonstrate the use of the articles in issue.

The imported fasteners were made in Japan in accordance with a sample or specifications submitted by plaintiff. Such fasteners are not standard spade bolts in terms of being listed in manufacturers' catalogs.

## IV.

### BOLT—COMMON MEANING

Defendant concedes that if the imported article is a "bolt," it is more specifically provided for under item 646.54 than under item 647.03, and that the presumption of correctness in favor of the collector's classification is automatically overcome. Therefore, plaintiff's burden of proof was limited to establishing that the articles are "bolts," within the common meaning of that term.

The common meaning of the term "bolts" has been considered by this court on several occasions: *Heads & Threads, Inc.* v. *United States*, 64 Cust. Ct. 104, C.D. 3966 (1970); *Heads and Threads, Division of MSL Industries, Inc.* v. *United States*, 60 Cust. Ct. 308, C.D. 3374, 282 F. Supp. 484 (1968); *Winter, Wolff & Co., Inc.* v. *United States*, 54 Cust. Ct. 173, C.D. 2528 (1965); *Morris Supply Company* v. *United States*, 52 Cust. Ct. 174, C.D. 2457 (1964); *John L. Westland & Sons, Inc., % Michael & Co.* v. *United States*, 42 Cust. Ct. 229, C.D. 2091 (1959).

As stated in *Morris Supply, supra*, at 176:

> The common meaning of the word "bolt" is a matter of law to be determined by the court. The testimony on the subject is merely advisory and not binding on the court, which may draw upon common knowledge or resort to any relevant authority which may serve as a guide to judicial undertanding. * * *

In the above cited cases, the following definition served as a basis for determining whether or not an article is a bolt for tariff purposes—
*Webster's New International Dictionary*, second edition (1950):

> *bolt* (bōlt), *n.* * * * 5. A pin or rod, esp. of steel, to fasten or hold something in place, often having a head at one end and a screw thread cut upon the other end. Bolts are given various names according to: (1) The general shape of the head, as *square-head, slotted, T eye, ring, etc.* (2) The mode of securing, as *expansion, tap, fox, key, etc.* (3) The use or application, as *carriage, coupling, elevator, hanger, track, stud, stove, etc.* * * * [Italics quoted.]

Additionally, we have noted that *Webster's Third New International Dictionary* (1966), defines "bolt" as: "6: a rod or heavy pin (as one made of steel) designed to fasten two or more objects (as metal plates) together *or to hold one or more objects in place* often having a head at one end and a screw thread cut upon the other end and being usu. secured by a nut or by riveting." [Emphasis added.]

*Funk & Wagnalls New Standard Dictionary of the English Language* (1952) defines the term "bolt" as follows:

> bolt, n. * * * 2. A pin or rod used for holding anything in its place, and often having a permanent head at one end.
>
> * * * * * * *
>
> Various bolts are named (1) from their use; as *bridge-bolt* (a rivet), *fender-b., holding-down b., stove-b., tire-b.,* etc.; (2) from their construction, as *double-ended* bolt (having threads at both ends), *double-headed b., eye-b.* (having an eye), *fang-b.* (having projections or teeth to prevent its moving while the nut is being screwed up), *hook-b., round-headed b., screw-b.;* (3) from their method of adjustment, as *dormant b.* (concealed in a mortise and operated by a key or knob), *flush-b.*

This dictionary illustrates 14 types of bolts without indicating that the illustrated types are all inclusive of the various types of bolts.

Hence, the various dictionaries cited above point up the fact that bolts have a great variety of shapes, forms, and applications. It appears that the essential characteristics of a bolt are: (1) it must be in the shape of a pin or rod; and (2) it must be designed to fasten or hold something in place. We find from the testimony and the representative sample before us that the instant articles have these essential characteristics and thus fall within the common meaning of the term "bolt."

Defendant contends that the imported articles are not bolts, but rather "anchors." The nub of defendant's argument was succinctly stated in this direct quotation from its brief, page 8:

> * * * Our position is that the common meaning of a bolt requires that *two surfaces* be held together through the action of the bolt transmitting motion * * *. With a nut, a bolt transmits motion through the tightening of the nut bringing two surfaces together. Without a nut, the head of the bolt transmits motion and brings one surface closer to another. The merchandise at bar does not transmit motion in the manner of a bolt. It is acting as an anchor. The spring assembly in Exhibit 2 may be fastened or held in place, but it is not bolted to the frame. It is anchored. [Emphasis copied.]

While it is undoubtedly true that most types of bolts function to hold two surfaces together (either with or without the aid of a nut) by the transmission of motion, the common meaning of the term bolt

is not restricted to such types. The provision for bolts in item 646.54, being without terms of limitation (except as to composition), includes all forms of the designated article. Cf. *John L. Westland & Son, Inc., supra,* at 231–2; *Winter, Wolff & Co., Inc., supra,* at 175–6. *Sprouse-Reitz Co., Inc.* v. *United States,* 8 Cust. Ct. 159, 160–161, C.D. 596 (1942).

Defendant also urges that the common meaning of "bolt" should be ascertained by the dictionary definition of the verb rather than the noun. *Webster's Third New International Dictionary* (1961) defines the verb "bolt": "to attach or fasten together with bolts." Obviously the meaning of the verb still depends upon the definition of the noun "bolts." In any event, the imported articles do attach or fasten together the frame and springs, and in that sense one part is bolted to the other.

In summary, we hold that the instant fasteners fall within the common meaning of the term "bolts," and as such they are more specifically provided for under item 646.54 than under either of the classifications invoked by the Government. Plaintiff's claim under item 646.54 is therefore sustained. All other claims are dismissed. Judgment will be entered accordingly.