(C.D. 4575)

AVDEL CORP. *v.* UNITED STATES

Court No. 71-6-00434

(Decided December 26, 1974)

*Rode & Qualey* (*William E. Melahn* and *John S. Rode* of counsel) for the plaintiff.

*Carla A. Hills*, Assistant Attorney General (*Gilbert Lee Sandler*, trial attorney), for the defendant.

WATSON, Judge: The basic issue in this case is whether the articles in dispute are rivets. The merchandise was classified as other articles of iron or steel under item 657.20 of the Tariff Schedules of the United States, as modified by T.D. 68-9, and assessed with duty at the rate of 13% ad valorem. Plaintiff claims the merchandise is classifiable as iron or steel rivets, not brightened, not lathed, and not machined under item 646.40, as modified by T.D. 68-9, dutiable at the rate of 0.3 cents per pound or as other rivets of base metal under item 646.41, as modified by T.D. 68-9, dutiable at the rate of 9.5% ad valorem.

My examination of the exhibits, my evaluation of the testimony offered by plaintiff and my study of the relevant technical and lexicographic authorities, as well as the relevant case law, lead me to conclude that the importations are indeed rivets.

The article in question is best described by reference to the diagram below (plaintiff's exhibit 2).

AVEX RIVET

Mandrel (Stem)

Head

Shell or Body

Core

Blind End

The manner in which the article functions is illustrated below (plaintiff's exhibit 4).

One

Two

Three

Four

In use, the article is inserted through holes in the materials to be joined as far as the head of the rivet permits. A special tool is then used to withdraw the mandrel which, as it withdraws, causes the shell of the rivet to collapse forming a second head or protrusion on the other side of the material being joined. At a certain point the tension of withdrawal causes the mandrel to break off at a preexisting weak spot inside the shell of the rivet. The withdrawn piece of mandrel is then discarded.

I am persuaded that the article I have just described is a rivet within the common meaning of that term, and I am not persuaded that the presence of a mandrel as a part of the rivet or the particular method by which the fastening is accomplished herein, that is to say, by the withdrawal of a mandrel piece, makes this article anything other than a rivet. I find no support for the proposition that a rivet must be a simple tubular, completely hollow article or one devoid of a mandrel. If the rivet contains within itself the means by which force is transmitted to deform it and develop the required protrusion, it is still manifestly a form of rivet. This seems to be precisely the sort of article which falls within the principle that a statutory designation of an article by name without limitations or any indication of contrary legislative intent or limiting judicial opinion includes all forms of the named article. *Nootka Packing Co. et al.* v. *United States*, 22 CCPA 464, T.D. 47464 (1935) ; *Nomura (America) Corp* v. *United States*, 58 CCPA 82, C.A.D. 1007, 435 F.2d 1319 (1971).

In *Remington Rand, Inc.* v. *United States*, 20 Cust. Ct. 1, C.D. 1075 (1947), Judge Lawrence pointed out that the meaning of the term rivet must be arrived at by a synthesis and distillation of the popular conception of what is commonly known as a rivet. In this endeavor the court considers not only the dictionary definitions but also "the character, nature, form, shape, material of which made, and exclusive use of the imported commodity * * *." In the *Remington Rand* case the characteristic seized on by the defendant in denying classification as a rivet was the absence of a head. Here the characteristic relied on to deny classification as a rivet is the presence of a mandrel portion. In neither case do I feel the characteristics involved detract from the primary and essential identity of the importation as a form of rivet. Just as the court in *Remington Rand* concluded that "rivets may be made with or without a head on one end * * *," I conclude that rivets may be made with or without a mandrel. In short, in its state as imported and as used, the imported article in form and function is a rivet.

A host of dictionary definitions of the term rivet are adequately set out in the *Remington Rand* case and amplified in the case of *Border Brokerage Company et al.* v. *United States*, 58 Cust. Ct. 228, C.D.

204

2947, 266 F.Supp. 903 (1967). As a result of studying these definitions, I would define a rivet as an article in the nature of a pin or bolt which unites separate pieces of material by passing through them, gripping them by means of heads or protrusions formed at its ends.

The testimony of plaintiff's witnesses, the dictionary definitions, as well as numerous authoritative technical sources such as the *Glossary of Terms for Mechanical Fasteners* published by the American Society of Mechanical Engineers and *Fastener Standards* (5th ed. 1970), establish fully to my satisfaction that the importations are rivets within the common meaning of the term.

Since the testimony clearly establishes that the imported rivets are not brightened, lathed, or machined, and since they are presumptively made of iron or steel (in accordance with their classification), I find they should be properly classified as "Rivets of base metal: Of iron or steel and not brightened, not lathed, and not machined" under item 646.40, as modified by T.D. 68–9, dutiable at the rate of 0.3 cents per pound.

Judgment will enter accordingly.