**ATLAS COPCO NORTH AMERICA, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

Court No. 87–02–00272.

United States Court of International Trade.

Oct. 26, 1993.

Barnes, Richardson & Colburn, David O. Elliott, Mel Lazar and Frederic D. Van Arnam, Jr., New York City, for plaintiff.

Frank W. Hunger, Asst. Atty. Gen., Joseph I. Liebman, Atty.-in-Charge, Intern. Trade Field Office and James A. Curley; Sheryl A. French, Office of Asst. Chief Counsel, Intern. Trade Litigation, U.S. Customs Service, of counsel, Washington, DC, for defendant.

### MEMORANDUM OPINION

WATSON, Senior Judge:

This is a dispute concerning the tariff classification of imported merchandise that is

---

described on the invoices as "Swellex bolts," and further described in technical literature as "Swellex rock bolts." The merchandise was manufactured by Atlas Copco, AB, Stockholm, Sweden, and imported by Atlas Copco North America, Inc., of Utica, New York. The Customs Service classified the merchandise under Item 657.25, TSUS, a general or "basket" provision for articles of iron or steel.

The plaintiff claims that the merchandise should be classified as bolts under Item 646.-54, TSUS.

The competing provisions of the TSUS are as follows:

Bolts, nuts, studs and studding, screws, and washers (including bolts and their nuts imported in the same shipment, and assembled bolts or screws and washers, with or without nuts); screw eyes, screw hooks and screw rings; turnbuckles; all the foregoing not described in the foregoing provisions of this subpart, of base metal:

of iron or steel:

646.54 Bolts and bolts and their nuts imported in the same shipment .................. 0.7% ad val.

\* \* \*

Articles of iron or steel, not coated or plated with precious metal:

\* \* \*

Other articles:

Other:

657.25 Other ..................... 5.7% ad val.

The parties entered into a stipulation of facts in lieu of trial. Attached to the stipulation are Plaintiff's Exhibits 1 through 9 and Defendant's Exhibits A through O.

The imported merchandise is tubular in shape and measures from two to twenty-four feet in length with bushings (metal sleeves), welded to both ends. The lower bushing of the imported merchandise has a flange whose purpose is to fasten and hold a bearing plate in place on the roof of the tunnel or mine.

The imported merchandise is made from a steel tube which starts out with an outer diameter of 41 mm. and a wall thickness of 2 mm. The outer diameter of the tube is reduced as the tube is reshaped by flattening it and folding it along its length so that the edges touch one another. This gives it a folded circular profile of 25.5 mm. In its final configuration it has the capacity to expand when water is injected into its folded interior. The merchandise is not threaded and is not used in conjunction with a nut.

The imported merchandise functions in the following manner: A hole is drilled into the roof of a mine or tunnel, into a stratum of stable rock. The merchandise is then inserted, through a hole in a bearing plate, into the drilled hole. The flange at the end does not allow it to pass through the bearing plate. Water, under high pressure, is then injected through a hole in the bushing into the hollow folded interior section of the tube. That is done by means of an installation rod which is connected to a high pressure water pump.

The pressure of the water distends the tube to near its original diameter. This forces the wall of the tube to move outwardly against the irregularities of the drill hole. That in turn causes the lower part of the tube to shorten. The reduction in length of the tube and its position in the hole hold the bearing plate firmly against the roof of the mine or tunnel. The tube is thus anchored in its position and assists in holding up the roof. After installation, the water pressure is released.

The imported merchandise is covered by four United States patents issued to Atlas Copco of Sweden which describe the subject matter of the patents as "method and installation of apparatus for rock bolting," as well as "method of rock bolting and tube formed expansion bolt." This merchandise substitutes for traditional mine roof bolts or rock bolts which traditional types are described in the annual book of ASTM Standards, Vol. 15–08, as bars with heads and threads.

According to the "Professional Users Handbook for Rock Bolting," a portion of which comprised plaintiff's Exhibit 4, the history of rock bolting dates from the end of the nineteenth century, but they were not used

extensively until 40 or 50 years later. In the introduction to Chapter 1 of that work it is stated that "the use of rock bolts in mining as well as in underground excavations for civil engineering applications has become worldwide and hundreds of millions of bolts are installed annually."

The evidence establishes that within the field of mining these importations are known as bolts. Ordinarily, the court would have to go no further because Congress is "regarded as having used the name of an article in the commercial sense ..." *United States v. Victoria Gin Co., Inc., Et Al.,* 48 C.C.P.A. 33, 1960 WL 8449 (1960). With respect to these articles however, the government argues that the usage in field of mining is not an accurate reflection of the commercial or common meaning of the term "bolt."

The government points to many technical dictionaries which generally define bolt as a metal rod with a head at one end and a thread on the other, the thread being designed to engage a fastening nut. According to the government, if a fastening device designed for insertion into a hole does not have a thread it cannot be called a bolt.

The government also argues that the purpose of a so-called rock bolt differs from that of genuine bolt in that it does not really hold two parts together but rather reinforces or stabilizes a mass of rock.

Plaintiff responds that bolts do not have to have threads and points to the definition of bolt adopted in the case of *A.L. Liebman & Son, Inc. v. United States* 65 Cust.Ct. 85, C.D. 4059 (1970). That opinion clearly supports the plaintiff's position in this action. (In passing, the court takes note of the government's scrupulous assurance that there is no relationship between the plaintiff in that case and the distinguished attorney in charge of the International Trade Field Office of the Commercial Litigation Branch of the Department of Justice.) Plaintiff also relies on a basic tenet of customs law that a named provision for an article encompasses all forms of that article. *Nootka Packing Co. v. United States,* 22 C.C.P.A. 464, T.D. 47464, 1935 WL 2283 (1935).

The government, in its turn, argues that the *Liebman* opinion was clearly erroneous, in that it found a common meaning that was so broad and indefinite as to include numerous articles that are demonstratively not bolts. In any event, the government asks this court not to adopt the reasoning of *Liebman* because it involved markedly different merchandise.

The government goes on to make a historical argument in which it tries to show that Item 646.54, under which plaintiff seeks classification, is a narrow descendent of section 330 of the Tariff Act of 1930. The latter covered: "bolts, with or without threads or nuts...." The government argues that if congress intended to cover unthreaded bolts it would have retained the language of section 330.

In its analysis, the court begins with the language of Item 646.54. If indeed this provision was written with an intention that the term bolt cover only articles with threads on them, further discussion would not be necessary. This line of argument by the government depends on the fact that item 646.54, unlike its ancestor, section 330 of the Tariff Act of 1930, does not describe the bolts as being "with or without threads ..." From this the government draws a conclusion that the first mention of bolts in item 646.54 must be the same type of bolt as the later mention of bolts with nuts in that item. All of this assertedly establishes threads as a defining characteristic of bolts.

This argument fails because legislative history clearly indicates that the coverage of item 646.54 was not intended to depart from its predecessor provision. *The Tariff Classification Study of 1962,* which serves as the explanatory notes for the TSUS, describes the scope of items 646.54 through 646.78 as reflecting "the existing treatment accorded to such products of iron and steel...." Tariff Classification Study of 1962, Schedule 6, Part 3—Metal Products, Page 188. At that time the existing treatment of such products was found in section 330. It appears plain, therefore, that the intention of the legislators was that item 646.54 would continue to encompass bolts as an *eo nomine* provision,

whether or not the bolts were threaded or unthreaded.

This brings us to discussion of the decision in *A.L. Liebman & Sons, Inc. v. United States,* 65 Cust.Ct. 85 C.D. 4059 (1970). In that case the article in dispute was a steel pin having a head at one end and a spade-like shape at the other end. It was used by manufacturers of redwood furniture to fasten or connect the frame of a redwood chair to a metal spring assembly which supported the seat. In other words, the article went through the wood and a hole in its spade end was hooked to a spring, thereby holding the seat assembly in the proper relation to the redwood frame. Judge Newman held that the imported articles should have been classified as a bolt under item 646.54. In so doing, the primary argument with which the court was concerned was the government's contention that a bolt must bring two surfaces together, not merely anchor one portion of an object to another. The court rejected that fine distinction. It is clear from the court's discussion of the various dictionary definitions of the term bolt that it did not consider threading to be an essential feature of a bolt, but rather emphasized its pin-like shape and its function of fastening or holding something in place. In the opinion of this court the decision in the *Liebman* case is sound and supports the view that threads are not essential to bolts.

The government has made an amusing argument that the standards for bolts described in *Liebman* are so loose that they would allow classification as a bolt for such things as hat pins, flag poles, and curtain rods. This might be true if the definition of a bolt was purely a matter of physical structure. However, so long as there is a functional element in the definition which relates to use in the real world we can be fairly confident that hair pins, flag poles and curtain rods will not achieve classification as bolts. It is inevitable that an attempt to physically describe the essentials of a fundamental object of manufacture should allow theoretical extension of the definition to articles that are not intended to be within the class.

In the opinion of the court, the weight of the evidence, the most plausible view of the evidence, and the legal precedents support the view that the articles here in dispute are bolts. These are rod-like articles that are used for fastening purposes and are regarded as bolts in the area of commerce most intimately involved in their use. This should be sufficient for the purpose of tariff classification. Even if one were to insist that a bolt must bring together the surfaces of two distinct entities the fastening of one stratum of rock to another is more than sufficient to satisfy that requirement.

It is also persuasive that the articles in question are an inventive advance over acknowledged bolts. Of course, the mere fact that they replace something that was definitely called a bolt does not mandate their classification as a bolt, any more than the replacement of horses by automobiles would justify classifying automobiles as horses. However, when the commercial field within which they were developed continues to regard them as bolts and designates them as such, the reasonable conclusion is that they are a form of bolts. It would be unreasonable to demand that the use or characterization of this type of specialized object be spread uniformly throughout the world of commerce. For this reason, the court does not give much weight to the fact that technical dictionaries do not yet seem to have included this type of bolt in their definitions.

In point of fact, the closest relative in the family of bolts, in physical or functional terms, may not be the predecessor bolts used in mines but an acknowledged type of bolt known as *expansion bolts.* They operate by means of an expanding attachment which is deformed and forced into closer proximity with the perimeter of a hole as the main body of the bolt turns and becomes shorter in relation to the position of a nut. In any event, the court finds it persuasive that these articles are essentially patented improvements in the field of metal fastening devices, used and known as bolts in the mining industry.

It is conducive to the steady and predictable development of the tariff law that inventive improvements which continue to be

known by a traditional name not be excluded from a class simply because of their new physical characteristics. The court finds the government's concentration on the presence of a thread to be an excessively limiting approach to the definition of bolts and much narrower than the approach which can be attributed to congress in creating tariff classifications designed to maintain their meaningfulness into the future. See, *Avdel Corp. v. United States,* 73 Cust.Ct. 200, C.D. 4575 (1974).

The government's emphasis on exact physical parameters resembles an importer's argument almost 60 years ago that minced clams should not be classified as clams because a meaningful change of form had taken place. That claim led to the landmark decision in *Nootka Packing Co. v. United States,* 22 C.C.P.A. 464, T.D. 47464, 1935 WL 2283 (1935) which is often cited for the proposition that tariff provisions cover all forms of the named article. It appears that there is no platonic ideal for a bolt. We must continually reassess the scope of the term in light of new developments and the continuity of language in particular fields.

The unworkability of an absolute physical standard, even for complex articles, is also illustrated in *Nippon Kogaku, Inc. v. United States,* 69 C.C.P.A. 89, 673 F.2d 380 (1982). In that case an article that concededly fell within the meaning of the general dictionary definitions of "microscope" nevertheless could not benefit from a headnote excluding microscopes from a tariff provision for optical instruments. It remained classifiable as an optical instrument because, among other reasons, the principal users of the merchandise did not refer to it as a compound microscope even though it had the necessary physical characteristics. It certainly follows that if the usage in a relevant area of commerce can nullify the effect of physical characteristics when those characteristics are present, it can also overcome the absence of a physical characteristic such as a thread on a bolt.

The attention of the court has been drawn to the recent decision of Judge Musgrave in *S.I. Stud, Inc. v. United States,* —— C.I.T. ——, Slip Op. 93–124, 1993 WL 261419 (July 1, 1993). In that case the dispute centered on whether a rod that was threaded along its entire length (which had originally been classified under the basket provision of Item 657.25) was better described as a bolt under Item 646.54 or a stud under Item 646.57. Although the article in question could conceivably have fallen within the definition of bolt, the court found that the term "stud" was more specific, more in keeping with the terminology of those who used the product, and more precise in terms of technical definitions. That decision, which had no reason to consider the existence of threadless bolts, contains no reasoning to suggest that bolts must have threads in all cases. In this case, specificity obviously favors the provision for bolts, and the terminology of those who use the product, its functional resemblance to expansion bolts, and its replacement of traditional bolts are given greater weight than general technical definitions of the term "bolt."

For the reasons given above, the classification is overruled and judgment will be entered for plaintiff.

### JUDGMENT

It is hereby ORDERED that the merchandise involved in this action be classified as bolts under Item 646.54 TSUS.