**HAFELE AMERICA CO., LTD., Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

**Court No. 92–11–00761.**

United States Court of International Trade.

Dec. 12, 1994.

stitutes are also available, although CDI alleges that they are inferior to the JINMA engines.

Sandler, Travis & Rosenberg, P.A., Edward M. Joffe and Arthur K. Purcell, Miami, FL, for plaintiff.

Frank W. Hunger, Asst. Atty. Gen., Joseph I. Liebman, Attorney-in-Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, James A. Curley, Office of the Asst. Chief Counsel, International Trade Litigation, U.S. Customs Service, Washington, DC, Karen P. Binder, New York City, of counsel, for defendant.

### MEMORANDUM and ORDER

GOLDBERG, Judge:

This matter comes before the Court on plaintiff's motion for summary judgment and

to dismiss defendant's counterclaim. Defendant opposes plaintiff's motion, asserting that a material issue of fact precludes summary judgment. The Court exercises its jurisdiction pursuant to 28 U.S.C. § 1581(a) (1988).

## BACKGROUND

This case involves the proper tariff classification of a small metal rod which serves as part of a two-component system used to join wooden panels together at an angle. The parties do not dispute the material facts which follow.

The cylindrical rod has a threaded foot, a wider unthreaded shank, a thin neck, and a round head with a flat, slotted top. In order to anchor the rod in place, the foot of the rod is screwed into one wooden panel. The unthreaded shank, neck, and head of the rod remain exposed. The exposed portion of the rod is then placed entirely into a pre-drilled hole on the side of a second wooden panel, creating an angle between the two panels. The head fits entirely into a small drum-shaped cam secured at the end of the hole in the second panel. The cam is torqued around the head of the rod to join and lock the two panels together.

The subject merchandise entered this country from Germany between November 26, 1990 and June 12, 1992. Customs liquidated certain entries of the merchandise as screws, under subheading 7318.15.80, Harmonized Tariff Schedule of the United States ("HTSUS"), with a duty rate of 9.5% ad valorem. Plaintiff timely protested the liquidation of the entries of the merchandise as screws, but Customs denied plaintiff's protests. Plaintiff then brought suit in this Court, alleging that Customs had erred in classifying the merchandise as screws. Customs counterclaimed, alleging that some entries of the merchandise, which it had not previously classified as screws, should be so classified.

Plaintiff now moves for summary judgment and dismissal of defendant's counterclaim. Plaintiff primarily argues that the merchandise should be classified as bolts, under HTSUS subheading 7318.15.20, with a duty rate of 0.7% ad valorem. In the alternative, plaintiff claims that the merchandise

should be classified as either: (1) studs, under HTSUS subheading 7318.15.50, with a duty rate of 4.7% ad valorem; (2) other base metal mountings, fittings and similar articles suitable for furniture, under HTSUS subheading 8302.42.30, with a duty rate of 5.7% ad valorem; or (3) other threaded articles, under HTSUS subheading 7318.19.00, with a duty rate of 5.7% ad valorem. Defendant opposes plaintiff's motion, claiming that a genuine issue of material fact exists as to whether the subject merchandise functions as a screw or as a bolt.

## DISCUSSION

■ The Court may grant a motion for summary judgment if it finds the case lacks genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law. USCIT Rule 56(d). The interpretation of a tariff term presents a question of law; therefore, if the only genuine issue before the Court is the meaning of a tariff term, the Court may grant summary judgment. Id.; Convertors Div. of Am. Hosp. Supply Corp. v. United States, 7 Fed. Cir. (T) 17, 19, 861 F.2d 710, 712 (1988).

■ In interpreting a tariff term, the Court presumes that Congress frames tariff acts using the language of commerce. Nylos Trading Co. v. United States, 37 CCPA 71, 73, C.A.D. 422, 1949 WL 4913 (1949). The Court also presumes that the commercial meaning of a tariff term coincides with its common meaning, in the absence of evidence to the contrary. United States v. C.J. Tower & Sons, 48 CCPA 87, 89, C.A.D. 770, 1961 WL 8716 (1961) (citation omitted). To determine the commercial or common meaning of a tariff term, the Court will draw on lexicons, its own knowledge, and other reliable sources. Id.

### A. Screws.

■ Customs' classification of the merchandise as a · screw, under subheading 7318.15.80, HTSUS, is afforded a statutory presumption of correctness. 28 U.S.C. § 2639(a)(1) (1988). Plaintiff bears the burden of rebutting this initial presumption. Id.

■ Customs asserts that it properly categorized the merchandise as a screw for two reasons. First, Customs asserts that the merchandise possesses the physical characteristics of a screw, as set forth by American National Standards Institute ("ANSI"). ANSI describes a screw as:

[A]n externally threaded fastener capable of being inserted into holes in assembled parts, of mating with a preformed internal thread or forming its own thread, and of being tightened or released by torquing the head.

ANSI/ASME Standard B18.2.1 (1981). Second, Customs asserts that the merchandise looks like a shoulder screw. A shoulder screw is a single component fulcrum upon which a lever turns. *Webster's Third New International Dictionary of the English Language Unabridged* 2105 (1993).

■ Plaintiff argues that Customs overlooks the primary purpose of the merchandise in categorizing it as a screw, and the Court agrees. Many items, e.g. a light bulb, possess the physical characteristics of a screw in that they are externally threaded and are capable of being tightened by torquing of the head. For an item to be a screw, however, it should fulfill its primary purpose upon having its head torqued, and that purpose should be one recognized for a screw. For example, upon having its head torqued, the item should fasten other objects together, or perhaps serve as a single component fulcrum upon which a lever turns. *See* ANSI/ASME Standard B18.2.1 (1981); *Webster's Third New International Dictionary of the English Language Unabridged* 2105 (1993).

It is undisputed that the subject merchandise does not accomplish its primary purpose upon having its head torqued. Rather, the merchandise must mate with a cam in order to accomplish its purpose of joining and locking two boards together at an angle. *Plaintiff's Statement of Material Facts* at 2; *Defendant's Response to Plaintiff's Statement of Material Facts* at 3. The joint created by the mating of the merchandise and the cam is then tightened and locked by torquing the cam, not by torquing the head of the merchandise. *Plaintiff's Statement of Material Facts* at 3; *Defendant's Response to Plaintiff's Statement of Material Facts* at 4. Because the merchandise does not accomplish its primary purpose upon having its head torqued, it is not a screw. Plaintiff has established that Custom's classification focuses on the physical parameters of the merchandise without acknowledging the undisputed purpose of the merchandise. *See Atlas Copco N. Am., Inc. v. United States*, 17 CIT ——, ——, 837 F.Supp. 423, 427 (1993) (Customs' emphasis on the physical parameters of a "Swellex rock bolt," rather than on the use and common name of the item, caused it to incorrectly classify the item as something other than a bolt). Plaintiff has therefore rebutted the presumption of correctness in favor of Customs' classification decision.

## B. Bolts.

Having found that plaintiff has rebutted the presumption in favor of Customs' classification decision, the Court turns to consider whether the alternative classifications proposed by the plaintiff fully describe the subject merchandise. *See Jarvis Clark Co. v. United States*, 2 Fed.Cir. (T) 70, 75, 733 F.2d 873, 878 (1984). Plaintiff first suggests that the category for bolts, HTSUS subheading 7318.15.20, describes the merchandise.

Dictionaries generally define the term "bolt" broadly, so as to encompass the subject merchandise. For example, *Funk & Wagnalls' New Comprehensive International Dictionary of the English Language, Deluxe Edition* (1980) defines a bolt as, among other things, "a pin or rod used for holding anything in its place." *Webster's New World Dictionary of American English, Third College Edition* (1988) defines a bolt as, among other things, "a threaded metal rod or pin for joining parts, having a head and usually used with a nut." *Id.* at 157. These dictionary definitions show that a bolt usually, but does not necessarily, work with a nut.

■ Courts have also interpreted the term "bolt" so as to embrace the subject merchandise. While the Court recognizes that decisions interpreting TSUS terms are not dispositive of the interpretation of HTSUS terms, the Court finds guidance in several

decisions interpreting the term "bolt" under both the Tariff Schedules of the United States ("TSUS") and HTSUS. *See* H.Conf. Rep. No. 576, 100th Cong., 2d Sess. 548, *reprinted in* 1988 U.S.C.C.A.N. 1582. Under the TSUS, the Customs Court found that a bolt is: (1) in the shape of a pin or a rod; and (2) designed to fasten or hold something in place. *A.L. Liebman & Son, Inc. v. United States,* 65 Cust.Ct. 85, 90, C.D. 4059 (1970). This Court further found that a bolt need not work in conjunction with a nut. *Atlas Copco,* 837 F.Supp. at 423. Under HTSUS, this Court confirmed that "bolt" is a broad term with "dozens of permutations of form and application." *S.I. Stud, Inc. v. United States,* 17 CIT ——, ——, 1993 WL 261419, *7 (July 1, 1993), *aff'd,* 12 Fed.Cir. (T) ——, 24 F.3d 1394 (1994).

The industry which deals with the merchandise also interprets the term "bolt" so as to include the subject merchandise. Plaintiff advertises and refers to its merchandise as a "bolt" or "connecting bolt." *Plaintiff's Memorandum in Support of Its Motion for Summary Judgment and to Dismiss Defendant's Counterclaim,* Exhibits 2, 3, 8. Instructions for assembly of a bookcase also refer to the subject merchandise as a "connecting bolt." *Id.,* Exhibit 12. An industry handbook discussing fasteners used in carpentry similarly refers to an item such as the subject merchandise as a "bolt." *Id.,* Exhibit 4.

In sum, dictionaries, prior court decisions, and trade materials all interpret the term "bolt" in a manner which encompasses the subject merchandise. For the foregoing reasons, the Court finds that the term "bolt" describes the merchandise at issue in this action.

### C. *Studs.*

Having found that the HTSUS subheading for bolts describes the merchandise, the Court turns to consider whether alternative categories proposed by plaintiff also describe the merchandise. Plaintiff suggests that the term "stud," used in subheading 7318.15.50, HTSUS, may also cover the merchandise.

According to the dictionary, the term "stud" encompasses a wide variety of items, which do not necessarily share distinguishing characteristics. *Webster's New World Dictionary of American English, Third College Edition* 1330 (1988) defines a stud as:

> **1** any of a series of small knobs or rounded nailheads used to ornament a surface, as of leather **2** a small, buttonlike device with a smaller button or shank on the back, inserted in a shirt front as an ornament or fastener **3** any of a number of upright pieces in the outer or inner walls of a building, to which panels, siding, laths, etc. are nailed ... **4** metal crossbar bracing a link, as in a chain cable **5** a projecting pin or peg used as a support, pivot, stop etc. or, as in an automobile tire, to increase traction on ice **6** a screw threaded at each end, used in fastening metal to metal or concrete.

Courts have generally interpreted the term "stud" in a manner consistent with its dictionary definition, finding it to cover a wide variety of items. For example, the Customs Court found that a "threaded or machined stud," used for fastening materials to steel or concrete in building construction, is a stud. *Fastening Devices, Inc. v. United States,* 40 Cust.Ct. 345, C.D. 2004 (1958). The Customs Court also found that a "Mordax horseshoe stud," used to prevent horses from slipping on ice, is a stud. *Gorman Anderson Corp. v. United States,* 34 Cust.Ct. 35, C.D. 1674 (1955). Furthermore, this Court found that a "stud-bolt," i.e. a rod threaded on both ends and secured by nuts, is a stud. *S.I. Stud, Inc.,* 1993 WL 261419 (July 1, 1993). In all of these cases, perhaps the courts found it persuasive that not only the dictionary, but also the industries which used the items at issue, identified the items as studs.

In this case, neither the dictionary nor the industry that uses the subject merchandise identifies the merchandise as a stud. The merchandise does not fit the dictionary definition of a stud because it: (1) is not ornamental; (2) does not function as a button-like device on clothes; (3) does not stand upright in the wall of a building; (4) does not serve as a metal crossbar bracing a link; (5) does not function as a stop or increase traction; and (6) is not a screw threaded at both ends and used to attach metal and concrete. Fur-

ther, none of the trade materials submitted by the parties identify the merchandise as a stud. In sum, because neither the referenced dictionary definition nor the industry that uses the subject merchandise identifies the merchandise as a stud, the Court finds that the HTSUS category for studs fails to describe the merchandise.

D. *Other Base Metal Mountings, Fittings, and Similar Articles Suitable for Furniture.*

■ Plaintiff also suggests that HTSUS subheading 8302.42.30, covering other base metal mountings, fittings, and similar articles suitable for furniture, applies to the merchandise. This category is located in Chapter 83 of the HTSUS. The chapter notes printed at the beginning of Chapter 83 provide, in part:

For purposes of this chapter, parts of base metal are to be classified with their parent articles. However, *articles of iron or steel of heading* 7312, 7315, 7317, *7318,* or 7320, or similar articles of other base metal (chapters 74 to 76 and 78 to 81) *are not to be taken as parts of articles of this chapter.* (Emphasis added).

Relative chapter notes, as well as the terms of HTSUS headings, aid in determining the classification of merchandise for customs purposes. *General Rules for the Interpretation of the Harmonized System,* Rule 1.

According to the relative chapter notes for Chapter 83, the merchandise cannot be classified as a mounting, fitting, or similar article suitable for furniture. As discussed above, the Court finds that the HTSUS category for bolts, subheading 7318.15.20, covers the merchandise in question. Because the merchandise is classifiable as a bolt under heading 7318, the chapter notes specifically exclude it from chapter 83. The Court therefore finds subheading 8302.42.30 inapplicable to the merchandise at issue in this case.

E. *Other Threaded Articles.*

■ Plaintiff also suggests that HTSUS subheading 7318.19.00, which is a basket provision covering other threaded articles, applies to the merchandise. In classifying an item for customs purposes, however, the Court looks for the category which most specifically describes the merchandise at issue. Reference to a basket provision such as subheading 7318.19.00 is proper only when no other provision describes the merchandise more specifically. *Regaliti, Inc. v. United States,* 16 CIT 407, 408, 1992 WL 117591 (1992). As discussed above, the Court finds that the subheading for bolts specifically covers the merchandise. Therefore, the Court does not find it necessary to apply the basket provision in this case.

## CONCLUSION

The Court finds that Customs erred in classifying the merchandise in question as a screw. The subject merchandise does not function primarily as screw or as a stud. Rather, it functions as a bolt which works in conjunction with a cam to join and lock two wooden boards at an angle. Because the merchandise is classifiable as a bolt, it is not classifiable for tariff purposes as a base metal mounting, fitting or similar article suitable for furniture, or other threaded article. Consequently, it is hereby

**ORDERED** that plaintiff's motion for dismissal of defendant's counterclaim is **GRANTED;** and it is further

**ORDERED** that plaintiff's motion for summary judgment is **GRANTED.** Judgment will be entered accordingly.

## *ORDER*

Court No. 92–11–00761 having come before the Court on plaintiff's motion for summary judgment and to dismiss defendant's counterclaim; and the Court, after due deliberation, having granted plaintiff's motion; now, in conformity with said decision, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:** that classification of the subject merchandise by the United States Customs Service ("Customs") under subheading 7318.15.80 of the Harmonized Tariff Schedule of the United States ("HTSUS") is reversed; it is further

**ORDERED, ADJUDGED,** and **DECREED:** that Customs shall reliquidate the subject merchandise under subheading

7318.15.20 of the HTSUS, at a duty rate of 0.7% percent *ad valorem,* and shall refund all excess duties paid with interest as provided by law;  and it is further

**ORDERED, ADJUDGED,** and **DE-CREED:** that defendant's counterclaim, which seeks to have certain entries of the merchandise reliquidated under subheading 7318.15.80 of the HTSUS, is **DISMISSED.** Judgment is hereby entered for the plaintiff.